IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| TONYA LAMBERT, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION: 18-00005-KD-B |
| | ) | |
| GMA INVESTMENTS, LLC, *et al.,* | ) | |
| Defendants. | ) | |

**ORDER**

This matter is before the Court on Plaintiff's motion for default judgment (Doc. 14). To date, Defendants have failed to appear, defend or otherwise respond in this case.

I.    **Background**

On January 5, 2018, Plaintiff initiated this *Fair Debt Collection Practices Act* case against Defendant GMA Investments, LLC (GMA) and Anthony Guadagna (Guadagna) for violations of 15 U.S.C. § 1692d (Count I), 15 U.S.C. § 1692e(11) (Count II), 15 U.S.C. § 1692g (Count III) and 15 U.S.C. § 1692e (Count IV). (Doc. 1). Specifically, Plaintiff alleges that defendants were doing business as Summit Receivables and the following occurred:

> 8. On August 22, 2017, Defendants left a voice mail message for Mrs. Lambert, the content of which is as follows: "Hi! This is Samantha from Summit Receivables. I'm contacting you regarding an automatic withdraw that was authorized on the checking account. And I just need to verify some information for security purposes. I can be reached at 1-844-498-6545. Thank you."
>
> 9. On August 25, 2017, Defendants left a voice mail message for Mrs. Lambert, the content of which is as follows: "This is Tammy Smith. I'm from Summit Receivables and I'm trying to reach you. I'm calling in regards to the file that we do have in our office and I'm actually calling with good news. We're trying to reach you in reference to this file. The client has extended an offer to close your account for the less than the amount that you owe. Give me a call and let me explain how this opportunity can work for you. My number here is 1-844-498-6545. Give me a call back today and I can explain to you the options. I'm looking forward to speaking with you. Once again, my name is Tammy Smith and I'm one of the senior managers

1

here at Summit Receivables so call me back today. 844-498-6545. I'm looking forward to talking with you. Have a great day!"

10. On or about September 11, 2017, Mrs. Lambert called Defendants and determined that they were attempting to collect a consumer debt she allegedly owes. Defendants had not been calling Mrs. Lambert to "verify some information for security purposes" in relation to any automatic withdraw from her checking account, but in fact to collect on an alleged debt.

11. Defendants failed to provide Mrs. Lambert with debt validation information pursuant to 15 U.S.C. 1692g within 5-days of their initial communication on or about August 22, 2017.

(Id.)  Plaintiff seeks statutory damages (15 U.S.C. § 1692k(2)), attorney's fees/costs.  (Id. at 5).[1]

On January 27, 2018: 1) GMA was served via service via U.S. mail and personal service on Anthony Guadagna, GMA's registered agent, by leaving the Summons at Guadagna's residence with "John Doe" (refused name) at the location on the Summons; and 2) Guadagna was served via service on "John Doe" (refused name) at the location on the Summons.  (Docs. 7, 8).  On February 22, 2018, Plaintiff requested a Rule 55(a) Clerk's entry of Default against both defendants due to their failure plead or otherwise defend in this case, with affidavits in support.[2]  (Docs. 9, 10).  On February 23, 2018, the Clerk entered defaults as to GMA and Guadagna.  (Docs. 11, 12).  On March 9, 2018, Plaintiff moved for entry of a default judgment against the defendants.  (Doc. 14). To date, defendants have neither appeared in this case nor defended against Plaintiff's claims.

## II.    Standard of Review

---

1 In the Complaint Plaintiff sought pre-judgment interest, but such is not requested in the motion.

2 *In addition to personal service*, Plaintiff's applications for default were mailed to Defendants at their addresses of record, per the relevant certificates of service.  Moreover, while personal service was effected on an unnamed individual per the Affidavits of Service, the Affidavits suggest the individual was Guadagna (service was effected at his address).  Regardless, per Rule 4(e)(2)(A), personal service can be effected on an individual within a judicial district of the United States by the process server leaving a copy of the summons and complaint "at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there."  The Affidavits support this, and affidavits by process servers constitute a *prima facie* showing that defendants have been served. Udoinyion v. The Guardian Security, 440 Fed. Appx. 731, 735 (11th Cir. 2011).

The <u>Federal Rules of Civil Procedure</u> establish a two-part process for obtaining a default judgment. Fed.R.Civ.P. Rule 55. First, if "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed.R.Civ.P. Rule 55(a). Second, after default has been entered, if the "claim is for a sum certain or a sum that can be made certain by computation" the clerk must enter default judgment. Fed.R.Civ.P. Rule 55(b)(1). In all other circumstances, such as here, "the party must apply to the court for a default judgment." Fed.R.Civ.P. Rule 55(b)(2). Specifically, Rule 55(b)(2) provides as follows:

> (2) By the Court. In all other cases, the party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to:
>
>> (A) conduct an accounting;
>> (B) determine the amount of damages;
>> (C) establish the truth of any allegation by evidence; or
>> (D) investigate any other matter.

The Eleventh Circuit has held that although "a default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover, a defaulted defendant is deemed to admit the plaintiff's well-pleaded allegations of fact. The defendant, however, is not held to admit facts that are not well-pleaded or to admit conclusions of law." <u>Tyco Fire & Sec., LLC v. Alcocer</u>, 218 Fed. Appx. 860, 863 (11th Cir. 2007) (citations and internal quotations omitted). Moreover, "before entering a default judgment for damages, the district court must ensure that the well-pleaded allegations of the complaint ... actually state a cause of action

and that there is a substantive, sufficient basis in the pleadings for the particular relief sought." Id. (emphasis omitted). Therefore, Plaintiff must establish a "prima facie liability case" against the defendant. Pitts ex rel. Pitts v. Seneca Sports, Inc., 321 F. Supp. 2d 1353, 1357 (S.D. Ga. 2004) (citations omitted). Further, when assessing damages, the Court has "an obligation to assure that there is a legitimate basis for any damage award it enters." Anheuser Busch, Inc. v. Philpot, 317 F.3d 1264, 1266 (11th Cir. 2003). Overall, "there is a strong policy of determining cases on their merits" and therefore defaults are viewed "with disfavor." In re Worldwide Web Sys., Inc., 328 F.3d 1291, 1295 (11th Cir. 2003). "Since this case involves a default judgment there must be strict compliance with the legal prerequisites establishing the court's power to render the judgment." Varnes v. Local 91, Glass Bottle Blowers Ass'n of U.S. and Canada, 674 F.2d 1365, 1369 (11th Cir. 1982). Finally, "allegations relating to the amount of damages are not admitted by virtue of default. Rather, the Court determines the amount and character of damages to be awarded." Miller v. Paradise of Port Richey, Inc., 75 F.Supp.2d 1342, 1346 (M.D. Fla. 1999).

III.    **Liability**

As alleged, at the relevant time Defendants were debt collectors under the FDCPA (Section 1692a) and Defendants were engaged in debt collection effort in an attempt to collect a consumer debt allegedly owed by Plaintiff.  (Doc. 1; Doc. 14 at 2, 8).

Upon review of the record, the Court is satisfied that both GMA and Guadagna have notice of the default proceedings.  Additionally, Clerk's Rule 55(a) defaults have already been entered against GMA and against Guadagna for failure to plead, answer or otherwise defend.  Moreover, Plaintiff seeks an award of $1,000 in statutory damages, $3,411.50 in attorney's fees and $473.00 in costs.  (Doc. 14 at 9).  As such, there appears to be a sum certain *which can be made*

4

*ascertainable* before the Court, from which a default judgment can be entered without a hearing. Securities and Exchange Commission v. Smyth, 420 F.3d 1225, 1231-1232 (11th Cir. 2005) ("Judgment of default awarding cash damages could not properly be entered without a hearing unless the amount claimed is a liquidated sum or one capable of mathematical calculation) (internal quotes and citations omitted); Id. at n.13 (an "evidentiary hearing is not a *per se* requirement…Rule 55(b)(2) speaks of evidentiary hearings in a permissive tone....no such hearing is required where all essential evidence is already of record[ ]"). Further, as to the merits of Plaintiff's complaint, a court may enter a default judgment *only* if the factual allegations of the complaint, which are assumed to be true, provide a sufficient legal basis for such entry. Nishimatsu Const. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975) ("The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law[]"). In considering a motion for default judgment, a court must "examine the sufficiency of plaintiff's allegations to determine whether the plaintiff is entitled to" a default judgment. Fidelity & Deposit Co. v. Williams, 699 F. Supp. 897, 899 (N.D. Ga. 1988).   The Court now turns to the merits.

Plaintiff alleges Defendants violated 15 U.S.C. § 1692d (Count I), 15 U.S.C. § 1692e(11) (Count II), 15 U.S.C. § 1692g (Count III) and 15 U.S.C. § 1692e (Count IV). As to Count I (Section 1692(d)), Plaintiff alleges that in their communications, Defendants failed to provide meaningful disclosure of their identity by failing to state that the communications were from a debt collector and that such communications were being made in an attempt to collect a debt.  Section 1692d provides: "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."  Section 1692d(6) provides for a violation of the FDCPA for "the placement of telephone calls without

meaningful disclosure of the caller's identity."  Given the sufficiency of Plaintiff's allegations *supra* Section I and the bases for the motion (Doc. 14 at 4-5) with Defendants failure to appear or otherwise defend, Plaintiff's motion as to Count I (Section 1692d) is **GRANTED.**

As to Count II (Section 1692e(11)), Plaintiff alleges that in the three (3) telephone communications with Plaintiff, Defendants failed to disclose the communications were from a debt collector.  Section 1692e(11) provides:

> The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

As alleged, the initial oral communication with Plaintiff (first voice mail message) did not disclose that Defendants were debt collectors attempting to collect a debt and that any information obtained will be used for that purpose.  Given the sufficiency of Plaintiff's allegations *supra* Section I and the bases for the motion (Doc. 14 at 5-6) with Defendants failure to appear or otherwise defend, Plaintiff's motion as to Count I (Section 1692e(11)) is **GRANTED.**

As to Count III (Section 1692g), Plaintiff alleges Defendants violated 15 U.S.C. § 1692g by continuing with their collection efforts after failing to send Plaintiff debt validation information within 5-days of their initial contact with Plaintiff.  Section 1692g(a) provides as follows:

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing--
> **(1)** the amount of the debt;
> **(2)** the name of the creditor to whom the debt is owed;
> **(3)** a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

> **(4)** a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
> **(5)** a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

As alleged, Plaintiff did not receive any debt validation information within five (5) days of Defendants' initial contact. Given the sufficiency of Plaintiff's allegations *supra* Section I and the bases for the motion (Doc. 14 at 7) with Defendants failure to appear or otherwise defend, Plaintiff's motion as to Count III (Section 1692g(a)) is **GRANTED.**

As to Count IV (Section 1692e), Plaintiff alleges Defendants violated 15 U.S.C. § 1692e, particularly 1692e(10) by misrepresenting that the purpose of a communication with Plaintiff was to "verify some information for security purposes" when in fact the purpose of the communication was to collect an alleged debt. Section 1692e(1) prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." Given the sufficiency of Plaintiff's allegations *supra* Section I and the bases for the motion (Doc. 14 at 7-8) with Defendants failure to appear or otherwise defend, Plaintiff's motion as to Count IV (Section 1692e) is **GRANTED.**

## IV.    <u>Statutory Damages</u>

Plaintiff seeks an award of $1,000 in statutory damages pursuant to 15 U.S.C. § 1692k(2)). Section 1692k(a)(2)(A) provides that "in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000." Section 1692k(b) states "[i[n determining the amount of liability…the court shall consider, among other relevant factors….the

frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional."

Taking Plaintiff's well-pleaded allegations as true, the Court finds that the frequency and persistence of noncompliance by Defendants was not severe.  There were only two (2) voice mail messages from Defendants to Plaintiff over a four (4) day period (From August 22-25, 2017). Then from August 28, 2017-September 11, 2017 there were no communications (or noncompliance) -- and perhaps would not have been any more but for Plaintiff contacting Defendants on September 11th for the third and final communication.  Additionally, given Plaintiff's allegations, Defendants' noncompliance appears intentional in the first (2) communications (i.e., as alleged Defendants misrepresented what they were calling about), but not in the final and third communication.  Moreover, as to the nature of noncompliance, while four (4) types of violations occurred there are no allegations of abusive or offensive language, threats, outrageous behavior, etc. Upon consideration, the Court awards **$200.00** in statutory damages to the Plaintiff -- $100 for each communication.[3]

---

3 <u>Cf</u>.  <u>Campbell v. Bradley Fin. Group</u>, 2014 WL 3350054, *4 (S.D. Ala. Jul. 9, 2014) (awarding $1,000 in a case where litigation and garnishment of wages was threatened -- "the number of calls reported by plaintiff are few, but the nature of the calls was egregious. The reported calls were intimidating and demanding and appear to have been intentional[]"); <u>Garcia v. Hillcrest, Davidson and Asoc., LLC</u>, 2017 WL 3475501 (D. Az. Jul. 18, 2017) (awarding $1,000 where during one phone call on one day threats were made about ruining plaintiff's credit and jeopardizing his ability to purchase his first home (which was in process at the time) prompting him to pay a debt that was not his); <u>Borillo v. Legal Recovery Law Offices, Inc.</u>, 2017 WL 1758088, *4 (N.D. Cal. May 5, 2017) (discussing instances in which courts refused to award damages for technical violations, awarded $300 for a single failure to provide written notice and awarded up to $1,000 for two phone calls as threatened criminal prosecution occurred). <u>Hemphill v. Ace Adjustment Co., Inc.</u>, 2014 WL 4783832 (D. Co. Sept. 25, 2014) (awarding $1,000 where the plaintiff was contacted on numerous occasions, with abusive language, was allegedly called stupid, was threatened with legal fees, the amount owed was misrepresented, and he was prompted to borrow money from a family member out of fear); <u>Capaldi v. American Credit & Collections, LLC</u>, 2014 WL 3925163 (E.D. Mich. Aug. 12, 2014) (awarding $1,000 where the plaintiff was threatened with his arrest and that of his elderly father causing his hospitalization, there was coercion of payment of a debt believed already been discharged in bankruptcy, etc.).

## V.      Attorney's Fees & Costs

Plaintiff seeks **$3,411.50 in attorney's fees** and **$473.00 in costs**.  (Doc. 14 at 9).  As set forth *supra*, Plaintiff is entitled to recover on her FDCPA claims and thus is also entitled to an award of costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3): "any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of…..in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court."

## A.      Attorney's Fees

The Eleventh Circuit has applied the lodestar method when calculating an appropriate award of attorney's fees under the FDCPA.  Moton v. Nathan & Nathan, P.C., 297 Fed. Appx. 930, 931-932 (11th Cir. 2008).  See also e.g., Dempsey v. Palisades Collection, Inc., 2010 WL 923473 (S.D. Ala. Mar. 11, 2010).  Under the lodestar method, courts multiply the number of hours reasonably expended by a reasonable hourly rate for similar legal services.  Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); Resolution Trust Corp. v. Hallmark Builders, Inc., 996 F.2d 1144, 1147, 1150 (11th Cir. 1993).  Adjustments may be made "as necessary[.]" Blum v. Stenson, 465 U.S. 886, 888 (1984).  See also Norman v. Hous. Auth. of the City of Montg., 836 F.2d 1292 (11th Cir. 1988).  Redundant, excessive, or otherwise unnecessary hours should not be included in the calculation of hours reasonably expended.  Hensley, 461 U.S. at 434.  Even when a party prevails, the court still must determine whether time was reasonably expended and if not, that time should be excluded.  Id.  While the "lodestar" method effectively replaced the balancing test in Johnson

v. Georgia Highway Express, Inc., 488 F.2d 714, 717-719 (5th Cir. 1974), the 12 Johnson factors "might still be considered in terms of their influence on the lodestar amount.  The factors are: 1) time/labor required; 2) novelty/difficulty of the questions; 3) skill requisite to perform the services properly; 4) preclusion of other employment by the attorney due to acceptance of the case; 5) the customary fee; 6) whether the fee is fixed/contingent; 7) time limitations imposed by the client or circumstances; 8) the amount involved and results obtained; 9) experience, reputation, and ability of the attorney; 10) "undesirability" of the case; 11) nature/length of the professional relationship with the client; 12) awards in similar cases. Johnson, 488 F.2d at 717-719.

    **1.**    **Reasonable rate**

As the party requesting fees, Plaintiff bears the burden of supplying the Court with specific and detailed evidence from which the Court can determine the reasonable hourly rate for the work performed.  American Civil Liberties Union of Ga. v. Barnes, 168 F.3d 423, 427 (11th Cir. 1999) (citing Norman, 836 F.2d at 1303).  The Eleventh Circuit has instructed that a reasonable hourly rate is "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation."  Norman, 836 F.2d at 1299.  In this case, the relevant legal community is Mobile, Alabama. Barnes, 168 F.3d at 437 (providing that "the 'relevant market' for purposes of determining the reasonable hourly rate for an attorney's services is 'the place where the case is filed[]'").  Additionally, the Court, which is familiar with the prevailing rates in the local market, may act as its own expert and rely on its "knowledge and experience" to determine the reasonableness and propriety of the requested rates.  Loranger v. Stierheim, 10 F.3d 776, 781 (11th Cir. 1994).  Moreover, this Court's prior awards are relevant and instructive in determining whether the "requested rate is in line with prevailing market rates" in

this district for attorneys of reasonably comparable skill, experience, and reputation to the attorney seeking an award of fees.  Langford v. Hale Cty. Ala. Comm'n, 2016 WL 4976859, *3 (S.D. Ala. Sept. 16, 2016).

Plaintiff seeks recovery of **$300/hour** for her counsel Robert Amador (Amador) and $50/hour for Amador's "paralegal/staff."  (Doc. 14 at 11-13); Doc. 14-3 at 3 (Decltn. Amador); Doc. 14-5 (Billing File record)).  In his Declaration and motion, Amador has provided no information as to his years of experience.  Amador has also provided no information as to his "paralegal/staff" - no names, no years of experience, no designation even between "staff" or "paralegal" or even whether such is a single individual or multiple individuals.  Amador has likewise failed to provide any dates for the time entries -- no dates on the billing record.

However, the Court has reviewed Amador's *Pro Hac Vice* filing in this case which indicates he was admitted to practice in March 2010, and thus is in his eighth (8th) year of practice.  (Doc. 2-1 at 1).  Additionally, Amador states that he has handled over 35 FDCPA cases and "represented hundreds of consumers" in such cases.  (Doc. 14-3 at 3 (Decltn. Amador)).  In the relevant market, Mobile, Alabama (not California as suggested by counsel), this Court has awarded attorneys practicing eight (8) years the rate of $200-$230/hour, as reasonable.  See, e.g., Mitchell Co., Inc. v. Campus, 2009 WL 2567889, 1 (S.D. Ala., Aug. 18, 2009) (finding $200/hour reasonable for eight years of experience).  Decorative Components Inc. v. ICON Computing Solutions, Inc., 2012 WL 5398800, *5–6 (S.D. Ala. Nov. 2, 2012) (awarding $230/hour for an attorney with eight years of experience); Branch Banking and Trust Co. v. Imagine CBQ, LLC, 2012 WL 1987830, *2 (S.D. Ala. June 4, 2012) (awarding $210/hour for special counsel with eight years of experience).  Upon

consideration, the Court finds **$230/hour** a reasonable rate for Amador, with eight (8) years in practice, specializing in FDCPA claims.

Regarding the "paralegal/staff" in Amador's law firm who billed time, there is insufficient information before the Court to award these fees.

2.   **Reasonable Hours**

In determining whether the number of hours expended are reasonable, the Court should not include any hours which are "excessive, redundant, or otherwise unnecessary." Norman, 836 F.2d at 1301. When awarding a fee, the "[c]ourts are not authorized to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded." Barnes, 168 F.3d at 428. The Court will not permit a party to recover fees for hours "that would be unreasonable to bill to a client and therefore to one's adversary irrespective of the skill, reputation or experience of counsel." Norman, 836 F.2d at 1301 (emphasis omitted). When a request for attorney's fees is unreasonably high, the court may "conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut." Bivins v. Wrap it Up, Inc., 548 F.3d 1348, 1350 (11th Cir. 2008).

Likewise, where the rates or hours claimed seem excessive or lack the appropriate documentation, a court may calculate the award based on its own experience, knowledge, and observations. Hensley, 461 U.S. at 433-434. See also e.g., Norman, 836 F.2d at 1299, 1303 ("[t]he court, either trial or appellate, is itself an expert on the question and may consider its own knowledge and experience concerning reasonableness and proper fees and may form an independent judgment with or without the aid of witnesses[]") (citations omitted); Villano v. City of Boynton Beach, 254 F.3d 1302, 1311 (11th Cir. 2001) (holding that a magistrate judge's across

the board reduction in fees of 25%, due to insufficient documentation, was proper); <u>Barnes</u>, 168 F.3d at 428 (cutting fee award due to insufficient documentation but finding fees appropriate); <u>Jean v. Nelson</u>, 863 F.2d 759, 772-777 (11th Cir. 1988) (discussing the reasonableness of the hours expended in light of the contention that the fee requests were not supported by sufficient documentation and involved duplication of efforts).

Further, the lodestar figure established may be adjusted by consideration of various factors including the following:

> (1) the nature and value of the subject matter of the employment; (2) the learning, skill, and labor requisite to its proper discharge; (3) the time consumed; (4) the professional experience and reputation of the attorney; (5) the weight of his responsibilities; (6) the measure of success achieved; (7) the reasonable expenses incurred; (8) whether a fee is fixed or contingent; (9) the nature and length of a professional relationship; (10) the fee customarily charged in the locality for similar legal services; (11) the likelihood that a particular employment may preclude other employment; and (12) the time limitations imposed by the client or by the circumstances.

<u>Van Schaack v. AmSouth Bank, N.A.</u>, 530 So.2d 740, 749 (Ala. 1988).

Counsel seeks recovery of **10.43 hours for billed attorney time** and **5.13 hours for "paralegal/staff" billed time**.[4]  As noted *supra*, there is insufficient information before the Court for the "paralegal/staff" billed time, including the dates of each task billed.  As for Amador's hours, the hours billed and tasks descriptions appear reasonable.   Accordingly, the court awards **$2,398.90** in attorney fees.

---

[4] Counsel's hours have been tallied by the Court from a review of the Billing record- Amador did not provide his hours in either his motion or his Declaration.

13

**B.**    <u>Costs</u>

Plaintiff seeks $473.00 in costs ($400 filing fee and $73.00 in process server fees). (Doc. 14-5 at 3).  Pursuant to Section 1692k(a)(3) and given the lack of any opposition by Defendants (who have failed to appear or otherwise defend), Plaintiff is awarded **$473.00 in costs.**

**VI.**    <u>Conclusion</u>

Accordingly, it is **ORDERED** that Plaintiff's motion for default judgment (Doc. 14) is **GRANTED in part**, as detailed *supra*, such that

1)    **DEFAULT JUDGMENT** is entered in favor of Plaintiff and against Defendants as to Plaintiff's four (4) FDCPA claims; and

2)    As to the amount awardable to Plaintiff, Plaintiff is awarded $2,398.90 in attorney fees, **$200.00 in statutory damages and $473.00 in costs.**

A Final Judgment consistent with the terms of this Order shall be entered by separate document as required by Rule 58 of the <u>Federal Rules of Civil Procedure</u> will be entered with this order.

**DONE** and **ORDERED** this the **24th** day of **April 2018.**

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**CHIEF UNITED STATES DISTRICT JUDGE**

14